**IN THE COURT OF APPEALS OF IOWA**

No. 21-1784
Filed February 16, 2022

**IN THE INTEREST OF M.D., C.D., C.D., and K.D.,**
**Minor Children,**

**C.B.D., Mother,**
      Appellant.

_____

Appeal from the Iowa District Court for Tama County, Casey D. Jones, District Associate Judge.

A mother appeals the termination of her parental rights to her four children. **AFFIRMED.**

Deborah M. Skelton, Walford, for appellant mother.

Thomas J. Miller, Attorney General and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Andrew Abbott, Waterloo, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to four children. She alleges the State failed to prove a statutory ground for termination, termination is not in the best interests of the children, and the court should have applied a permissive exception to termination.

## I.  Background Facts & Proceedings

This family came to the attention of the Iowa Department of Human Services (DHS) in March 2019 following the execution of a search warrant at their home that led to the discovery of drug paraphernalia evidencing methamphetamine use, including a hypodermic needle found in the children's room.[1] As a result, the two oldest children, C.D. and C.D., were adjudicated children in need of assistance (CINA) on June 19, 2019. K.D. was adjudicated CINA on August 21. All three children were removed from their father's custody on August 21, although their mother retained custody. The court ordered that the father have no contact with the children unless approved by DHS.

In June 2020, a year after the adjudication, the State filed a request for removal of C.D., C.D., and K.D. from their mother's custody, based on the mother allowing contact between the children and their father. There were also concerns about the mother's own drug use based on behavioral indicators that suggested the mother was using methamphetamine.[2] The district court granted the removal.

---

[1] DHS records show that there have been concerns over the children's well-being and the father's drug use since 2013.

[2] The mother consistently denied any drug use throughout the duration of the CINA proceedings despite positive drug screens.

The three children were placed with their maternal grandparents, where they have resided since their removal.

Following the children's removal, the mother quickly resumed living with the father. She became pregnant soon after. Despite consistent recommendations from the court and DHS to cut ties with her children's father—due largely to his drug use and controlling behavior over the mother—the two married in March 2021 at the county jail where the father was incarcerated. The mother gave birth to M.D. in April 2021. M.D. was adjudicated CINA and removed from parental custody two days after her birth. The mother tested positive for methamphetamine six times during her pregnancy. M.D. has lived with the same foster family since removal.

The mother has participated in a myriad of services provided by DHS. She had supervised visits with her children twice a week until May 2021, when the visits moved to semi-supervised. It appears uncontroverted that the mother is loving and interacts well with the children. That said, testimony from the DHS social worker assigned to this case indicated that the mother tends to do well while the father is incarcerated but relapses and rekindles the relationship once he is released. As a result, she prioritizes the father over the children.

The mother has attended therapy, although DHS caseworkers testified that she only began actively engaging in the therapy in August 2021. She also completed substance abuse counseling, although she testified it was only related to alcohol since she has never used any other drug. Despite the mother's professed period of sobriety starting in February 2021, a sweat patch she was wearing during the termination proceeding was positive for methamphetamine in November 2021.

Petitions to terminate the mother's parental rights to all four children were filed on June 30, 2021. A hearing was held on October 18. At the time of the termination hearing, the four children were eight, seven, two, and two months old. The court heard testimony from the children's respective placements, a family support specialist who supervised visits between the mother and children, the DHS social worker assigned to the case, and the mother. The district court terminated the mother's parental rights to all four children. The mother appeals.[3]

## II. Standard of Review

We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "Although we are not bound by the juvenile court's findings of fact, 'we do give them weight, especially in assessing the credibility of witnesses.'" *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "To support the termination of parental rights, the State must establish the grounds for termination under Iowa Code section 232.116 [(2021)] by clear and convincing evidence. 'Clear and convincing' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (citations omitted). Once the State has established a ground for termination, "the parent resisting termination bears the burden to establish an exception to termination identified in Iowa Code section 232.116(3)." *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021) (quoting *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018)). Our fundamental concern is the best interest of the child. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

---

[3] The father's parental rights were terminated at the same proceeding. He does not appeal.

### III.    Discussion

The mother alleges the district court incorrectly found a statutory ground for termination.  She also claims termination is not in the children's best interest and that the court should have applied a permissive exception to termination based on her close bond with the children.

#### a.  Grounds for Termination

The mother contends there is insufficient evidence of a statutory basis for termination.  The district court terminated her rights under section 232.116(1)(d) and (i) for all four children, (h) for M.D. and K.D., and (f) for C.D. and C.D.  "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).  We focus on paragraphs (f) and (h).[4]

The only element of both paragraphs that the mother challenges is whether there is clear and convincing evidence that the children can be returned to her under section 232.102 at the present time.  Iowa Code § 232.116(1)(f)(4), (h)(4).  "[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new [CINA] adjudication. . . .  If any one of the definitional grounds of [CINA] are met, that is enough to terminate." *In re M.M.*, 483 N.W.2d 812, 814–15 (Iowa 1992).  Further,

---

[4] The paragraphs are materially identical except for the requisite age of the child involved (four-years-old or older for paragraph (f), three-years-old or younger for paragraph (h)) and the length of time the child has been removed from the parent's physical care (twelve of the last eighteen months or last twelve consecutive months for paragraph (f), six of the last twelve months or last six consecutive months for paragraph (h)).

"[t]he threat of probable harm will justify termination." *Id.* At the present time means at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

The district court found it "imminently likely [the children would] suffer harmful effects as a result of . . . [the mother's] failure to exercise a reasonable degree of care in supervising them" under Iowa Code section 232.2(6)(c) because of her struggles with substance abuse and her pattern of allowing the father around the children despite his drug use. We agree. First, the mother has an established pattern of refusing to cut ties with the father despite several years of court and DHS involvement. As soon as the three oldest children were removed in June 2020, she quickly became pregnant with another child, M.D., who was born the following April.[5] And the parents got married at the county jail in March 2021.

The mother had a sweat patch on at the time of the termination proceeding that tested positive for methamphetamine, highlighting that her struggles with substance abuse have not been resolved. That past behavior, particularly since it is so recent, is a strong indicator for future performance. *See C.B.*, 611 N.W.2d at 495. Further, as the district court noted, the mother tends to test positive for drugs when she maintains contact with the father, but tests negative when he is incarcerated. Her ongoing pattern of contact with the father raises concerns for her sobriety.

---

[5] The June 2020 removal was prompted by the mother's ongoing contact with the father, including taking her children to visit him despite a court order expressly prohibiting her from doing so.

The State, DHS, and the guardian ad litem for the children recommended termination of the mother's parental rights. The family support specialist testified that the mother informed her she was considering a divorce in August and had made progress recognizing the negative influence the father holds over her since around the same time. She did not recommend termination.[6] However, the district court did not find the mother credible.[7] The court determined that "her half-hearted statements at trial that she was contemplating divorce and being done with [the father] ring hollow given her actions and the history of this case." While not binding, we do give weight to the district court's credibility determination, and find it amply supported by the record. *See id.* at 492.

Moreover, the same provider testified that the children could not be returned to their mother at the present time. She recommended another few months of continuing the status quo. But, "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *Id.* at 494 (quoting *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987)). Instead, "[o]nce the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *Id.* at 495. The underlying case for the three older children has been open for approximately two-and-a-half years. The children, particularly at their

---

[6] This testimony was given prior to the mother's November 2021 positive drug tests results being received.

[7] For instance, in spite of the mother's assertions to the contrary, the district court "firmly believes that if she had custody of the children, [the mother] would take them to see [the father] in a heartbeat." Similarly, despite the mother "boldly [declaring] on the witness stand, under oath, at the termination hearing that she had never used methamphetamine . . . there is absolutely no question in the court's mind that she has used methamphetamine."

young age, need permanency. There is clear and convincing evidence to support terminating the mother's parental rights under section 232.116(1)(f) and (h).

### b. Best Interest of Children

Having found a ground for termination, we must now consider whether termination is in the children's best interest. *P.L.*, 778 N.W.2d at 39. In doing so, we "give primary consideration to the child[ren]'s safety, the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

The district court determined that the mother's ongoing drug abuse and inability to avoid contact with the father of the children meant termination was in the children's best interest. Upon our de novo review, we agree. The record establishes that the mother has failed to make meaningful progress on her struggles with substance abuse, including refusing to even acknowledge she has ever used drugs despite drug tests evidencing the contrary. Further, her refusal to cut ties with the children's father places the children at risk because of his own drug use. Termination best serves the children's long-term development and growth.

The children are integrated into their respective placements, both of whom are willing to adopt the children should the mother's rights be terminated. *See* Iowa Code § 232.116(2)(b). C.D., C.D., and K.D. reside with their maternal grandparents and appear well-adjusted. M.D. has been with her current foster placement since she was two-days-old and is fully integrated with the family. The

successful integration of the children in their respective placements further suggests termination is in their best interest.

### c. Permissive Exception to Termination

The mother claims the district court should have applied one of the permissive exceptions found in section 232.116(3). In particular, the mother claims her strong bond with the children precludes termination. *See* Iowa Code § 232.116(3)(c). The factors under 232.116 "are permissive, not mandatory." *A.S.*, 906 N.W.2d at 475. The parent resisting termination bears the burden of establishing an exception. *Id.* at 476.

The record does not contain clear and convincing evidence of her close bond with her children sufficient to preclude termination. First, M.D. was removed from her mother at just two-days-old. She has never resided with her mother. The mother has failed to establish the existence of a bond with the youngest child for consideration of this permissive exception. Second, while the three older children have a bond with their mother—reflected by the generally positive interactions at visits—the children have done well while living with their grandparents. They have lived with their grandparents since June 2020. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (finding a bond was insufficient to prevent termination because the children had achieved stability and developed well in their foster placement after removal from the parent's care for almost two years).

And, the existence of a bond is not enough for the invocation of this exception. "The law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child bond.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (citation omitted). The

mother has not offered clear and convincing evidence termination would be detrimental to her children.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**